# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY PROJECT, INC.,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF ENERGY,

    *Defendant*.

Civil Action No. 17-779 (TJK)

## MEMORANDUM OPINION AND ORDER

When a new President is elected, a "transition team" is formed to begin the process of handing over power from the old administration to the new. As part of this process, members of the transition team interact with the staffs of federal agencies. This case arises from discussions between the most recent presidential transition team and Department of Energy ("DOE") staff, specifically discussions pertaining to a questionnaire on a variety of DOE-related issues, as well as certain other discussions regarding DOE personnel. Plaintiff The Protect Democracy Project, Inc. ("Protect Democracy") filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents on those topics. This lawsuit concerns Protect Democracy's objections to DOE's response.

The parties have cross-moved for summary judgment. ECF Nos. 12, 13.[1] As explained below, each party's motion is granted in part and denied in part. The action shall proceed according to the schedule set forth below.

---

[1] The Court has considered the entire record in connection with the motions, including the following documents: ECF No. 12-1 ("Def.'s Br."); ECF No. 12-2 ("Morris Decl."); ECF No. 12-3 at 1-5 ("Def.'s Ex. A"); *id.* at 6-7 ("Def.'s Ex. B"); *id.* at 8-9 ("Def.'s Ex. C"); *id.* at 10-13 ("Def.'s Ex. D"); *id.* at 14-19 ("Def.'s Ex. E"); *id.* at 20-24 ("Def.'s Ex. F"); *id.* at 25-29 ("Def.'s

## I.  Factual and Procedural Background

In early December 2016, a member of the presidential transition team contacted DOE staff with questions on a variety of topics, including a request for the names of DOE employees who had attended certain meetings regarding climate change.  Def.'s Reply SoMF ¶¶ 1-2.  (Like the parties, the Court will refer to these questions as the "Questionnaire.")  After versions of the Questionnaire leaked to the press, the transition team disavowed it and "counseled" the employee who had prepared it.  *Id.* ¶¶ 3-6.  Later, during his confirmation hearing, Energy Secretary Rick Perry also distanced himself from the Questionnaire, saying, "I didn't approve it, I don't approve of it, I don't need that information, I don't want that information."  *Id.* ¶ 7.  A partially redacted version of the Questionnaire, including DOE's responses, has been posted to the DOE website at http://www.energy.gov/management/downloads/74-point-questionnaire.  *Id.* ¶ 8.

On February 15, 2017, Protect Democracy sent DOE the following two-part FOIA request:

> 1) Any and all records created between November 9, 2016 and the present date by or between Department of Energy employees regarding or including Presidential Transition Team questionnaires about climate change (aka "global warming"), including but not limited to communications between Department of Energy employees and the following individuals: Donald Trump, Stephen Bannon, Reince Priebus, Stephen Miller, Kellyanne Conway, Sean Spicer, Michael Pence, Daniel Simmons, David Jonas, Jack Spencer, John Giordano, Kelly Mitchell, Mark Maddox, Martin

---

Ex. G"); *id.* at 30-89 ("*Vaughn* Index"); ECF No. 12-4 ("Def.'s SoMF"); ECF No. 13 at 3-29 ("Pl.'s Br."); *id.* at 30-42 ("Pl.'s Resp. SoMF"); ECF No. 13-1 ("Stewart Decl."); ECF No. 13-2 (exhibits 1 to 14 to the Stewart Declaration, each of which is cited as "Pl.'s Ex. __"); ECF No. 17 ("Def.'s Reply"); ECF No. 17-1 at 1-5 ("Supp. Morris Decl."); *id.* at 11-14 ("Def.'s Reply Ex. A"); *id.* at 15-25 ("Supp. *Vaughn* Index"); *id.* at 26-31 ("Def.'s Reply Ex. B"); ECF No. 17-2 ("Def.'s Reply SoMF"); ECF No. 19 ("Pl.'s Reply"); ECF No. 19-1 ("Supp. Stewart Decl."); ECF No. 19-2 (exhibits 1 and 2 to the Supplemental Stewart Declaration, each of which is cited as "Pl.'s Reply Ex. __").  The Court has disregarded what appears to be an erroneously filed second version of the Supplemental Declaration of Alexander C. Morris (which seems to be missing a paragraph).  *See* ECF No. 17-1 at 6-10.

> Dannenfelser Jr., Thomas Norris, Travis Fisher, William Greene and Rick Perry.
>
> 2) Any and all records created between November 9, 2016 and the present date regarding personnel changes, new personnel assignments or new personnel assignment policies by or between Department of Energy employees and the Executive Office of the President or Presidential Transition Team (aka "Landing Team"), including but not limited to communications between Department of Energy employees and the following individuals: Donald Trump, Stephen Bannon, Reince Priebus, Stephen Miller, Kellyanne Conway, Sean Spicer, Michael Pence, Daniel Simmons, David Jonas, Jack Spencer, John Giordano, Kelly Mitchell, Mark Maddox, Martin Dannenfelser Jr., Thomas Norris, Travis Fisher, William Greene and Rick Perry.

Def.'s Ex. A. On February 21, 2017, DOE responded with a letter acknowledging the request. Def.'s Ex. B. From March through October 2017, DOE provided several interim responses, including documents responsive to the request. Def.'s Exs. C-F.

DOE sent its final response by letter dated December 1, 2017. Def.'s Ex. G. The letter explained that DOE's Office of Management ("MA") and Office of the Chief Human Capital Officer ("HC") had handled the request. *Id.* DOE's interim responses and final response, combined, provided Protect Democracy with 45 documents responsive to the request. *Id.* The final response explained that DOE had redacted certain information covered by the deliberative-process privilege under Exemption 5 of FOIA, as well as certain personal information under Exemption 6. *Id.*

On April 27, 2017, Protect Democracy filed this lawsuit. ECF No. 1. After DOE completed its response to the requests, the parties filed and briefed their respective motions for summary judgment. ECF Nos. 12, 13. The parties dispute whether DOE conducted an adequate search in response to the first request (relating to the Questionnaire), and whether DOE properly invoked the deliberative-process privilege under Exemption 5. *See* Pl.'s Br.

In its motion papers, DOE describes the search it undertook in response to each request. For the first request, DOE explains, it searched the files of Ingrid Kolb, the Director of MA, because "all transition-related communications with the transition team were disseminated to DOE through Ms. Kolb." Morris Decl. ¶ 13. DOE initially stated that Kolb searched her email using the following terms: "transition," "questionnaire," "questions," and "personnel," which identified 21 responsive documents. *Id.* ¶ 17. However, in its reply papers, DOE explained that Kolb had in fact performed a manual search based on her knowledge of her email file, not an electronic search based on the application of search terms. Supp. Morris Decl. ¶ 13. Moreover, DOE had only released emails "between DOE and the DOE transition team and [had] not include[d] communications by and between non-transition team DOE employees." *Id.* ¶ 14. Therefore, on April 19, 2018, DOE's Office of the Chief Information Officer performed an electronic search of Kolb's files using the search terms "transition," "questionnaire," and "questions," finding an additional seven responsive documents. *Id.* ¶¶ 15, 17. DOE made a supplemental release on May 29, 2018, shortly before the filing of its reply brief. Def.'s Reply Ex. A.

For the second request, DOE searched the files of three HC employees with responsibility for "any personnel assignments between DOE employees and the Executive Office of the President or the Presidential Transition Team." Morris Decl. ¶ 22. DOE used the search term "'beachhead,' which is the term that DOE used to refer to the transition landing team." *Id.* It also reviewed all communications between these three employees and two particular transition team members during the relevant time frame. *Id.* This search located 24 responsive documents. *Id.*

4

DOE avers, at least in its initial motion papers, that it "searched all locations likely to contain documents responsive to Plaintiff's FOIA requests." *Id.* ¶ 39. DOE has filed a *Vaughn* index explaining the withholdings it made in connection with the 2017 releases, as well as a supplemental *Vaughn* index for its May 2018 release. *Vaughn* Index; Supp. *Vaughn* Index. DOE further states that it has limited its withholdings so as to release "all reasonably segregable information" to Protect Democracy. Supp. Morris Decl. ¶ 21.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "[T]he vast majority of FOIA cases can be resolved on summary judgment . . . ." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Congress enacted FOIA in 1966 to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *EPIC v. DHS*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).

In FOIA cases, "to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir.

5

2015) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The court may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* at 580-81 (quoting *Oglesby*, 920 F.2d at 68). "'[S]ummary judgment is inappropriate' if 'a review of the record raises substantial doubt' as to the search's adequacy, 'particularly in view of well defined requests and positive indications of overlooked materials.'" *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)) (internal quotation marks omitted). "The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure . . . ." *Morley*, 508 F.3d at 1114 (quoting *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998)).

In addition, if the agency has invoked any of FOIA's exemptions, the "burden is on the agency to justify withholding the requested documents, and the FOIA directs district courts to determine *de novo* whether non-disclosure was permissible." *EPIC*, 777 F.3d at 522. "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). That is, the agency must provide a "logical" or "plausible" justification for the exemption. *Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007)). The agency cannot rely on "conclusory and generalized allegations of exemptions." *Morley*, 508 F.3d at 1115 (quoting

*Founding Church of Scientology of Wash., D.C., Inc. v. NSA*, 610 F.2d 824, 830 (D.C. Cir. 1979)).

FOIA further requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Before approving the government's withholdings, the court has an affirmative duty to ensure that the segregability requirement is satisfied, even if it must do so *sua sponte*. *See Morley*, 508 F.3d at 1123.

## III. Analysis

As explained below, both parties' motions will be granted in part and denied in part.

### A. Adequacy of DOE's Search

Protect Democracy disputes the adequacy of DOE's search for documents responsive to the first request (relating to the Questionnaire). Pl.'s Br. at 9-15. Specifically, it challenges DOE's decision to search the files of only one custodian (Ingrid Kolb), as well as DOE's choice of search terms. *Id.* The Court agrees with Protect Democracy that DOE has not undertaken an adequate search in response to the first request.[2]

#### 1. Custodians

It appears that DOE initially misconstrued the scope of the first request. DOE largely limited its search to external communications between DOE staff and the transition team, including (at most) only a small subset of internal DOE communications. *See* Supp. Morris

---

[2] Protect Democracy has not disputed the adequacy of DOE's search in fulfillment of the second request (relating to DOE personnel). *See* Pl.'s Br. at 9-15. In the absence of any challenge, the Court concludes that the record supports summary judgment for DOE on this point.

Decl. ¶ 14.[3] That was a mistake. The government is required "to construe a FOIA request liberally." *LaCedra v. Exec. Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)). In particular, an agency should not narrow a broadly worded FOIA request merely because the requester goes on to specify particular information he is seeking. *See id.* Here, Protect Democracy's first request began by asking for records "by or between Department of Energy employees," Def.'s Ex. A, language that clearly includes internal agency documents. It then added the following clause: "including but not limited to communications between Department of Energy employees" and various transition officials. *Id.* DOE should have interpreted the request liberally to cover both internal DOE records and external communications with the presidential transition team. Instead, it limited the scope of the request to the "including" clause, which was improper. *See LaCedra*, 317 F.3d at 348.

While DOE sought to remedy its error by re-reviewing Kolb's emails, *see* Supp. Morris Decl. ¶ 15, it never reconsidered its initial decision to limit its search to Kolb's files. DOE explains that Kolb "was the DOE employee in charge of all transition-related materials and was the DOE employee who communicated directly with the DOE transition team," *id.* ¶ 9, that she "was involved in all communications with the DOE transition team," *id.* ¶ 10, and that "DOE staff was instructed to send responses to Ms. Kolb," *id.* ¶ 11. But DOE "has offered no reason for why no *other* [DOE] employee was likely to have sent, received, or been copied on responsive emails." *Sea Shepherd Conservation Soc'y v. IRS*, 208 F. Supp. 3d 58, 75 (D.D.C.

---

[3] DOE's supplemental declaration states that MA initially limited its search to communications "between DOE and the DOE transition team." Supp. Morris Decl. ¶ 14. It is not entirely clear whether the "DOE transition team" means DOE staff tasked with assisting the presidential transition team, or staff of the presidential transition team tasked with reviewing DOE.

2016) (emphasis added). To the contrary, it seems likely that other DOE employees would have discussed the Questionnaire without forwarding every such document to Kolb.

DOE objects that it should not be required "to search the records of every employee in the entire Department." Def.'s Reply at 3. The Court agrees such a search would be unreasonable, but Protect Democracy is not asking for that. It argues instead that DOE could (and should) have identified additional custodians likely to have responsive records. For example, Protect Democracy points to evidence in the record that Kolb emailed certain employees with a request to "coordinate" answers and send them to her. *See* Pl.'s Reply at 3-4; Pl.'s Reply Ex. 1. Such employees would be a logical starting place for DOE in identifying a bounded universe of additional custodians.

Therefore, the Court will order DOE to conduct an additional search that encompasses the files of additional custodians. The Court is not in a position to dictate precisely which custodians a reasonable search would encompass. Instead, the Court will direct the parties to meet and confer regarding additional custodians; if they cannot entirely agree, then DOE should proceed with its search and the parties may address the issue in renewed summary judgment briefing.

### 2. Search Terms

The Court is less convinced by Protect Democracy's argument that DOE's search terms are too limited. In general, courts should not "micro manage" how agencies respond to FOIA requests. *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). Accordingly, the D.C. Circuit has upheld search terms that "were reasonably calculated to discover any records" responsive to the request. *Judicial Watch, Inc. v. U.S. Dep't of State*, 681 F. App'x 2, 4 (D.C. Cir. 2017). It has also rejected the proposition that the government must affirmatively explain why every search term proposed by the plaintiff is unnecessary. The

9

government's obligation is "to show that its search efforts were reasonable and logically organized to uncover relevant documents; it need not knock down every search design advanced by every requester." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). Applying these principles, district courts in this Circuit have concluded that agencies have "discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request." *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 125 (D.D.C. 2018) (quoting *Agility Pub. Warehousing Co. v. NSA*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015)). Nonetheless, this discretion is "not boundless." *Coffey v. BLM*, 249 F. Supp. 3d 488, 498 (D.D.C. 2017).

DOE applied three search terms to Kolb's files: "questionnaire," "questions," and "transition." Supp. Morris Decl. ¶ 15.[4] These terms "correspond to the scope of the request[]." *Barouch v. DOJ*, 962 F. Supp. 2d 30, 53-55 (D.D.C. 2013). Protect Democracy asked for records "regarding or including Presidential Transition Team questionnaires about climate change (aka 'global warming')." Def.'s Ex. A. While the search terms did not include all the phrases in the request—in particular, "climate change" and "global warming"—Protect Democracy is not looking for all documents about climate change, but for documents about a questionnaire that was, only in part, about climate change. Indeed, despite Protect Democracy's characterization of the questionnaire as "about climate change," the questions covered a broad range of topics, such as the DOE's "statutory authority . . . with respect to cybersecurity," "the number of Assistant Secretaries set by statute," and the "reports to Congress or other external parties that are due in 2017." Pl.'s Ex. 14 (questions 3, 39 and 51). And while many of the questions no doubt relate to climate change in some way, *see* Def.'s Reply SoMF ¶ 2, not one of

---

[4] While DOE initially claimed to have applied an additional term, "personnel," *see* Morris Decl. ¶ 17, it appears that this term was never actually applied and was ultimately abandoned in the subsequent electronic search of Kolb's email, *see* Supp. Morris Decl. ¶¶ 13-15.

the questions appears to have actually used the term "climate change" or "global warming," *see* Pl.'s Ex. 9; Pl.'s Ex. 14; Def.'s Reply Ex. B; Pl.'s Reply Ex. 2. Thus, the terms DOE used appear to cover the request.

As a result, the burden shifts to Protect Democracy to raise "substantial doubt" about DOE's search. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003). "[W]hat matters once the agency has fulfilled its burden under FOIA of conducting 'reasonably calculated' searches is whether the requester can identify any additional searches that must be conducted." *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013). It is not DOE's obligation to "knock down" every search term that Protect Democracy has proposed. *DiBacco*, 795 F.3d at 191. Rather, it is Protect Democracy's burden to propose additional search terms, *see, e.g.*, *Rosenberg v. ICE*, 959 F. Supp. 2d 61, 71 (D.D.C. 2013), and explain why they are required, *see DiBacco*, 795 F.3d at 191.

Protect Democracy argues that DOE should have used two additional sets of search terms: the terms "climate change" and "global warming," which appear in its request, *see* Pl.'s Br. at 13; Pl.'s Reply at 5-6, and certain words related to the current search terms, namely "question," "point," "points," "query," "queries," "request," "requests" and "feedback," *see* Pl.'s Br. at 13; Pl.'s Reply at 7.

On the current record, though, Protect Democracy's showing that these terms are necessary is not a strong one. For the reasons already noted, the terms "climate change" and "global warming" are not facially necessary for a reasonable search. It is also far from obvious that the synonyms Protect Democracy has proposed are necessary. Agencies are not required to use an exhaustive set of synonyms in electronic searches. *Cf. Looks Filmproduktionen GmbH v. CIA*, 199 F. Supp. 3d 153, 168-69 (D.D.C. 2016) (declining to require the search term "Stasi,"

11

the common nickname for the East German secret police, when the full word, "*Staatssicherheit*," had already been used). Even a single term can be adequate in the context of a well-designed search. *See Wisdom v. U.S. Tr. Program*, 266 F. Supp. 3d 93, 104 (D.D.C. 2017); *Agolli v. OIG*, 125 F. Supp. 3d 274, 283 (D.D.C. 2015), *aff'd*, No. 15-5273, 2016 WL 6238495 (D.C. Cir. Sept. 22, 2016); *EPIC v. DOJ Crim. Div.*, 82 F. Supp. 3d 307, 316-17 (D.D.C. 2015). Protect Democracy has also argued for a more expansive search by pointing to responsive documents that DOE has failed to uncover. *See* Pl.'s Br. at 14-15; Pl.'s Reply at 7-8. While such documents can be a useful source of "leads" for additional search terms, *Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 550 (D.D.C. 2014), Protect Democracy has not identified a single specific document that would not have been found using DOE's terms. Rather, the source of these deficiencies could just as plausibly be DOE's improper restriction of the number of custodians.

Moreover, DOE objects that the proposed terms are likely to find an excessively large number of unresponsive documents. Def.'s Reply at 4. This is, at least in principle, a valid concern. "[F]ederal agencies properly use search terms that are designed to return responsive documents as a means of targeting their resources in the most efficient manner." *Looks Filmproduktionen*, 199 F. Supp. 3d at 168. Thus, courts "will not order [agencies] to commit [their] limited resources to searching anew for what is unlikely to yield new responsive materials." *Hall v. CIA*, 268 F. Supp. 3d 148, 161 (D.D.C. 2017). There may be a large volume of agency records that discuss "climate change" or "global warming"—and there would certainly be a large number that contain generic terms like "question." In this case, DOE's objection is particularly appropriate given that Protect Democracy proposes to have DOE use each term in isolation. *See* Pl.'s Br. at 12-13; Pl.'s Reply at 5-8. A reasonable search in this case could

include a complex query that includes some combination of these terms. But Protect Democracy has not proposed any such query.

However, the Court will not issue a final ruling on DOE's search terms at this time, because it may well be that the work of identifying an appropriate list of custodians will also lead to additional search terms. Therefore, as the parties meet and confer about additional custodians, they shall meet and confer about search terms as well.

### B. Exemptions

Protect Democracy has not challenged DOE's invocation of Exemption 6, *see* Pl.'s Br. at 20 n.26, and the Court determines that those withholdings are proper. The Court also concludes that DOE has satisfied FOIA's segregability requirement with respect to the withholdings under Exemption 6.

Protect Democracy does challenge DOE's invocation of the deliberative-process privilege under Exemption 5 in some documents. Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It incorporates common law privileges such as the deliberative-process privilege. *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014). This privilege rests on the principle that, if "agencies were 'to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'" *Id.* (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987)). "The deliberative process privilege covers communications that are pre-decisional and deliberative." *Id.* at 463. "To be pre-decisional, the communication (not surprisingly) must have occurred before any final agency decision on the relevant matter." *Id.* "The term 'deliberative' in this context means, in essence, that the

communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Id.*

The record is unclear regarding whether Protect Democracy also objects to the Exemption 5 withholdings in DOE's May 2018 supplemental release. Protect Democracy has not specifically challenged any of them. *See* Pl.'s Reply at 9-18. But at least some of those withholdings arguably fall within the scope of Protect Democracy's intended challenge. *See* Pl.'s Br. at 16 n.22; Supp. *Vaughn* Index. In light of this uncertainty, the Court will deny both motions without prejudice insofar as they relate to DOE's invocation of Exemption 5 in the documents listed on DOE's Supplemental *Vaughn* Index. Therefore, if DOE continues to withhold information under Exemption 5 in these documents, and Protect Democracy in fact challenges those withholdings, the parties must address these documents in renewed motions for summary judgment following the completion of DOE's search.

Only two of the documents that DOE released in its initial 2017 productions appear to be in dispute: a version of the Questionnaire that was sent to the transition team, *Vaughn* Index at 1-2, and an email chain in which employees discussed the process for obtaining a security clearance for incoming Secretary Perry, *id.* at 28-30. *See* Pl.'s Br. at 16-20 & n.22; Pl.'s Reply at 9-18.[5] The Court will deny both motions without prejudice insofar as they relate to the Questionnaire and the discussion of Secretary Perry's security clearance, concluding that the record does not support summary judgment for either party at this time.

---

[5] With respect to the remaining documents listed in DOE's original *Vaughn* index, the Court concludes, based on the record and in the absence of any challenge from Protect Democracy, that Exemption 5 and FOIA's segregability requirements have been satisfied.

### 1. Questionnaire

Protect Democracy raises a threshold objection to DOE's invocation of Exemption 5 in the version of the Questionnaire that DOE employees sent back to the presidential transition team with their responses: the transition team is not an "agency" under FOIA, and therefore, Protect Democracy argues, this communication is not an "inter-agency" record within the scope of Exemption 5. Pl.'s Reply at 12-13. The Court concludes that the instant briefing is inadequate to reach a decision on this important and interesting issue, which was first raised in Protect Democracy's reply.

A rather old decision from another district court held that the presidential transition team is not an "agency" under FOIA, or even part of the Executive Branch at all. *See Ill. Inst. for Continuing Legal Educ. v. U.S. Dep't of Labor*, 545 F. Supp. 1229, 1231-33 (N.D. Ill. 1982). The D.C. Circuit has acknowledged this case without reaching its own conclusion on the issue. *See Wolfe v. HHS*, 711 F.2d 1077, 1079 n.4 (D.C. Cir. 1983). Recently, in *American Oversight v. GSA*, 311 F. Supp. 3d 327 (D.D.C. 2018), a federal agency "concede[d] that, based on Justice Department guidance, 'transition teams are considered nonagencies for purposes of the FOIA.'" *Id.* at 342 (quoting agency affidavit). This led the *American Oversight* court to conclude, under the reasoning of *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001), that communications between the agency and the transition team fell outside the exemption. *See* 311 F. Supp. 3d at 342.

However, assuming that the transition team is not in fact an "agency" under FOIA, this Court is not certain it necessarily follows that documents shared between DOE and the transition team fall outside Exemption 5. The D.C. Circuit has held that agency communications with the White House are "inter-agency" communications even though the President and his immediate staff are not an "agency" within the meaning of FOIA. *Judicial Watch, Inc. v. Dep't of Energy*,

412 F.3d 125, 129-31 (D.C. Cir. 2005). This holding reflected "the basic need of the President and his White House staff to monitor the consistency of executive agency regulations with Administration policy." *Id.* at 130 (quoting *Sierra Club v. Costle*, 657 F.2d 298, 405 (D.C. Cir. 1981)). "[W]hat matters," the Court held, "is whether a document will expose the pre-decisional and deliberative processes of the Executive Branch." *Id.* at 131. And in *Public Citizen, Inc. v. DOJ*, 111 F.3d 168 (D.C. Cir. 1997), the D.C. Circuit held that *former* Presidents' communications with the National Archives and Records Administration "relating to access to their respective presidential records" fall within Exemption 5, even though former Presidents are not, strictly speaking, part of the government at all. *Id.* at 169. The court noted that "the former President in this context can hardly be viewed as an ordinary private citizen" and "retains aspects of his former role," including the ability to assert executive privilege. *Id.* at 170. The Supreme Court in *Klamath* acknowledged the holding of *Public Citizen* and declined to address it, leaving the case standing. *See* 532 U.S. at 12 n.4.

Protect Democracy has not addressed how the D.C. Circuit's decisions in *Judicial Watch* and *Public Citizen* bear on this threshold question, and DOE has not had the opportunity to address this question at all. Instead of ordering supplemental briefing, the Court will require the parties, if they continue to dispute the redactions in the Questionnaire (or other communications between DOE and the transition team), to address this threshold issue in renewed motions for summary judgment to be filed after DOE completes its search.

### 2. Emails Regarding Secretary Perry's Security Clearance

Protect Democracy also objects to DOE's partial redaction of an email chain containing "internal deliberations among DOE employees regarding how then Governor Perry could get the necessary security clearances in place for his work as the Secretary." *Vaughn* Index at 28. These discussions, Protect Democracy argues, did not involve "policy-oriented judgment" as

16

required to fall within the deliberative-process privilege. Pl.'s Br. at 18; *see* Pl.'s Reply at 15-18. The Court agrees that the instant record does not support DOE's withholdings.

On the one hand, courts have found many types of agency deliberations—even ones that do not directly implicate an agency's primary regulatory function—to fall within the privilege. For example, the D.C. Circuit has held that the privilege covers predecisional deliberations about official agency histories. *See Nat'l Sec. Archive*, 752 F.3d at 465 (citing *Dudman Commc'ns*, 815 F.2d at 1568-69; *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982)). District courts in this Circuit have similarly held that the privilege covers agency deliberations about how to communicate with persons outside the executive branch (such as the press and Congress). *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018). And deliberations about a specific decision—as opposed to a "policy" writ large—may fall within the privilege. *See, e.g.*, *Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 575 F.2d 932, 935 (D.C. Cir. 1978).

On the other hand, "[t]o fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented *judgment*." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992); *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (holding privilege "is designed to protect agency policy-oriented judgments"). Many agency decisions on purely logistical issues will fail to fit this description. What to serve in the agency cafeteria is likely an important decision for many agency employees, but it is doubtful that deliberations on that subject will involve "policy-oriented judgment." Along these lines, in *CREW v. DOJ*, 648 F. Supp. 2d 152 (D.D.C. 2009), the court rejected the agency's assertion of the privilege over emails containing a "request for assistance in gathering information" and discussing which agency subcomponent "should have

17

responsibility" for handling that request. *Id.* at 158. Releasing this information, the court concluded, would "have no impact whatsoever on the quality of [the agency's] decisions because it [was] not 'so candid or personal in nature that public disclosure [was] likely in the future to stifle honest and frank communication within the agency.'" *Id.* at 159 (quoting *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

DOE's *Vaughn* index states that the redacted material in question "consists of opinions and recommendations provided as part of the DOE's decision-making process before DOE reached any final decisions on the most expedient method for securing the necessary security clearance and before Governor Perry was sworn in as the Secretary of Energy." *Vaughn* Index at 28-29. But it is not clear to the Court how these discussions involved any kind of policy judgment, as opposed to purely logistical considerations. Nor has DOE adequately explained how releasing this information would be likely to stifle intra-agency communication. The Court also notes that the parties have cited no prior case in which information regarding security clearances was held exempt under Exemption 5, although such information has been protected under FOIA's law-enforcement exemption, *see Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007); *Judicial Watch, Inc. v. U.S. Dep't of State*, 282 F. Supp. 3d 36, 42-45 (D.D.C. 2017).

DOE, citing *Chemical Manufacturers Ass'n v. CPSC*, 600 F. Supp. 114 (D.D.C. 1984), argues that it is entitled to deference regarding "[w]hat constitutes part [of] an agency's policy judgment." Def.'s Reply at 9-10. But that case, which concerned certain scientific studies conducted by the agency as it worked toward a final report (still unreleased at the time of the court's decision), merely held that deference was due "while the decisionmaking process is in progress." 600 F. Supp. at 118. The court hinted at "[c]loser scrutiny and fuller disclosure" once the report was released. *Id.* Here, there is no ongoing decisionmaking process regarding

Secretary Perry's security clearance. And in any event, the D.C. Circuit has made clear that the agency must "*plausibly* demonstrate[] the involvement of a policy judgment," *Petrol. Info. Corp.*, 976 F.2d at 1436 (emphasis added), meaning that a conclusory assertion will not suffice.

Here too, if DOE continues to insist on these redactions (and Protect Democracy continues to challenge them), it must file a renewed motion for summary judgment after its search is complete and provide additional support for them, whether by filing a revised *Vaughn* index, filing additional declarations, or submitting the documents themselves for *in camera* review.

## IV. Conclusion and Order

For reasons stated above, it is hereby **ORDERED** that both parties' motions for summary judgment (ECF Nos. 12 and 13) are **GRANTED IN PART** and **DENIED IN PART**. The Court rules as follows:

- DOE has not conducted an adequate search in response to Protect Democracy's first request (relating to the Questionnaire).

- DOE has conducted an adequate search in response to Protect Democracy's second request (relating to DOE personnel).

- DOE has properly invoked Exemption 6 in all documents it has released to Protect Democracy thus far.

- DOE has properly invoked the deliberative-process privilege under Exemption 5 in all documents released thus far, *except* that the Court denies both motions without prejudice insofar as they relate to DOE's invocation of Exemption 5 in the following documents: (1) DOE's response to the transition team's Questionnaire, (2) documents discussing Secretary Perry's security clearance, and (3) the documents DOE released after Plaintiff's cross-motion was filed. If the parties continue to dispute these withholdings, they shall address them in their renewed motions for summary judgment (see below).

It is **FURTHER ORDERED** that the following schedule shall govern further proceedings:

19

1. The parties shall promptly meet and confer regarding additional custodians and appropriate search terms for DOE's search in response to Protect Democracy's first request (relating to the Questionnaire);

2. The parties shall file a status report with the Court regarding their progress no later than thirty (30) days after the date of this Order, and additional status reports every thirty (30) days thereafter until DOE has released all nonexempt material responsive to the request; and

3. Within thirty (30) days after DOE has completed its final release, the parties shall meet, confer, and file a joint report setting forth the following information:

    (a) Whether the parties continue to disagree regarding the adequacy of DOE's search, and if so, a precise description of the areas where they agree and disagree;

    (b) Whether the parties continue to disagree regarding DOE's withholdings, and if so, a list of the documents in dispute (and for each document, the exemption or exemptions at issue); and

    (c) If necessary, a proposed schedule for renewed motions for summary judgment.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 17, 2018